UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JOHN WOODSIDE, III                                    CIVIL ACTION

v.                                                    NO. 17-12191

PACIFIC UNION FINANCIAL, LLC                          SECTION "F"

ORDER AND REASONS

Before the Court is Pacific Union Financial, LLC's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is GRANTED.

**Background**

Home-mortgage lenders often require the borrower to maintain insurance on the mortgaged property. When the borrower fails to secure his own insurance, the mortgage agreement typically authorizes the lender to secure the insurance and pass the cost on to the borrower. This case is about whether the lender is authorized to select insurance, called lender-placed insurance, that is significantly more expensive than the insurance the borrower could obtain on his own.

On May 6, 2014, John Woodside bought a home in Madisonville, Louisiana for $170,000. He obtained a $157,712 mortgage from American National Mortgage Co., Inc., which was immediately sold to Pacific Union Financial, LLC. Pacific Union currently services

1

the mortgage. The mortgage agreement requires that Woodside insure his property "against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance," and against floods. Additionally, if Woodside fails to obtain insurance, "then the Lender *may do and pay whatever is necessary* to protect the value of the Property and Lender's rights in the Property," including obtaining insurance. Pacific Union would withdraw funds from Woodside's escrow account to purchase the LPI policy. The parties agreed that Pacific Union may control and manage Woodside's escrow funds.

Woodside obtained a policy that insured the property from May 2, 2014 until May 5, 2015. The flood insurance policy provided $207,000 in coverage; the annual premium was $788. On May 7, 2015, Pacific Union sent a letter to Woodside stating that the policy lapsed on May 2, 2015, and that it had not received an acceptable renewal or replacement policy. The letter warned that if Pacific Union did not receive proof of flood insurance within 45 days, it would purchase coverage on Woodside's expense, and that it would cost "at least $8,196.62 annually."[1] Accordingly, on June 23, 2015,

---

[1] The notice stated in bolded font:
   For your protection and ours, as required by your mortgage, your property must be kept continuously insured. If we do not receive replacement or renewal flood coverage within 45 days of the date of this notice, we will purchase coverage at your expense effective May 2, 2015. The insurance we buy may provide less coverage and be more costly than your old policy. It does not cover the following: loss, damage or theft of

2

Pacific Union notified Woodside that it had acquired lender-placed insurance, also called force-placed insurance, for the property through Ironshore Europe Limited. The LPI policy provided $155,646 in coverage and cost $8,196.62 per year. The notice informed Woodside that the LPI policy would be cancelled as soon as Woodside obtained an acceptable policy. Pacific Union paid itself $8,196.62 out of Woodside's escrow account on August 14, 2015. The following year, on March 16, 2016, Woodside obtained acceptable coverage. Accordingly, Pacific Union cancelled the LPI policy and credited Woodside's escrow account $1,055.43, the prorated cost of the LPI policy for the remaining months.

Woodside brought this proposed class action lawsuit against Pacific Union on November 10, 2017. He alleges that Pacific Union breached the explicit terms of the mortgage agreement, the implied covenant for good faith and fair dealing, and its fiduciary duties when it selected a LPI policy that was significantly more expensive

---

personal property or the contents of the dwelling. The total cost of your insurance will be at least $8,196.62 annually. You must pay us for any period during which the insurance we buy is in effect but you do not have insurance. An insurance document providing proof of increased coverage must be received in order to have this lender placed insurance coverage cancelled.

Pacific Union alleges that it also sent Woodside a second letter, dated June 8, 2015, advising Woodside that it was the "second and final notice." The letter reiterated that if Woodside did not obtain insurance, Pacific Union would purchase coverage at Woodside's expense for $8,196,62, effective May 2, 2015.

3

than the policy he had originally selected. On January 11, 2018, Pacific Union moved to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997)(quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee

than the policy he had originally selected. On January 11, 2018, Pacific Union moved to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997)(quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee

v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept as true legal conclusions. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). The Court's task "is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." Thompson v. City of Waco, Texas, 764 F.3d 500, 503 (5th Cir. 2014)(citation omitted). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." Iqbal, 556 U.S. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

## II.

In his proposed class action, Mr. Woodside does not allege that Pacific Union has a right to impose a lender-placed insurance policy. Instead, Woodside contends that Pacific Union's selection of the LPI policy, which costs ten times more than Woodside's previously obtained insurance, violates the explicit and implicit terms of the contract, and is a breach of its fiduciary duty.

### A. Breach of Contract

Woodside contends that Pacific Union breached the explicit language of the mortgage agreement, and breached the agreement's implied covenant of good faith and fair dealing. He asserts that Pacific Union breached the contract in three ways: (1) The mortgage agreement restrained Pacific Union to obtain insurance "only to

6

the extent that was reasonably necessary to protect" Pacific Union's interest in the property. Pacific Union violated the agreement by obtaining an "excessive, unreasonable, and unnecessary" LPI policy that exceeds the amount necessary to protect its interest. (2) Pacific Union receives a portion of the borrowers' insurance premium from the insurer, which Woodside refers to as a "kickback." Borrowers, including Woodside, are forced to pay an amount that was greater than the cost of insurance "designed to pad extensively Pacific Union's bottom line—not to reasonably protect assets under its servicing control." (3) Pacific Union required Woodside to pay for retroactive coverage, even though the time period in which the coverage applied to lapsed and no loss occurred during the lapsed period. Woodside alleges that "backdating" does not protect Pacific Union's property interest because the time had already passed without incident, so there is no risk of loss. Because retroactive coverage is not necessary to protect the property, charging for those amounts is beyond Pacific Union's contractual authority.

Many of Woodside's arguments are premised on the belief that the contract permits Pacific Union to obtain coverage "*only to the extent 'necessary'* to protect the property's value." The plaintiff repeatedly asserts that the explicit terms of the contract required Pacific Union to be "reasonable" in its selection of a LPI policy.

7

The Court finds it difficult to identify any language that supports the plaintiff's claim. The mortgage agreement provides:

> If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any covenants and agreements contained in this Security Instrument, . . . then **Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property**, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

(Emphasis added). It does not require the lender to do only what is necessary, nor does it require the lender to be "reasonable" in its selection. The agreement confers broad discretion to the lender to obtain insurance when necessary; specifically, when the borrower breaches his own contractual duty and fails to provide his own insurance. Cohen v. American Sec. Ins. Co., 735 F.3d 601, 604, 611-12 (7th Cir. 2013)(holding that obtaining an LPI policy that was five times more than the borrower's purchased insurance was authorized by similar contractual language that "gives the lender broad discretion to act to protect its own property interest."). Analyzing identical language, this Court has held, "[n]othing in these terms requires the lender to purchase the cheapest insurance or the insurance that provides the most value for the borrower." Robinson v. Standard Mortgage Corp., 191 F.Supp.3d 630, 642 (E.D. La. 2016) (Vance, J.). The contract does not prevent Pacific Union from obtaining insurance (after the borrower failed to obtain his own) that is more expensive than what the borrower could have selected.

The plaintiff next alleges that the defendant breached the explicit terms of the contract by receiving kickbacks from its lender-placed insurance company. He claims that Pacific Union and Ironshore entered into an exclusive arrangement where Ironshore provided policies to Pacific Union's borrowers, and Pacific Union received a portion of the premium. Because Pacific Union had an incentive to select a high-cost policy, Woodside asserts, its interests were opposed to its borrowers. Further, he claims the kickbacks exceed the authority authorized under the contract because they are not necessary to protect the lender's interest in the property.

Woodside uses the term "kickback" to describe a commission. The Seventh Circuit, one of two circuit courts to address claims attacking costly LPI policies,[2] held that a kickback occurs when

---

[2] Two U.S. Courts of Appeals, the Seventh Circuit and the Eleventh Circuit, and several district courts have addressed the LPI policy issues attacked in Woodside's complaint. See Cohen v. American Sec. Ins. Co., 735 F.3d 601 (7th Cir. 2013)(holding that the plaintiff's claims alleging kickbacks, backdating, and excessive charges failed to successfully allege a breach of contract or implied covenant of good faith); Faez v. Wells Fargo Bank, N.A., 745 F.3d 1098 (11th Cir. 2014) (dismissing the plaintiff's complaint for failing to state a claim when the plaintiff failed to sufficiently allege a breach of the explicit terms of the contract or the implied duty of good faith and fair dealing). The mortgage agreements and factual circumstances are very similar, if not identical, in each case. This Court is the only court in the Fifth Circuit to have previously ruled on similar issues. See Robinson v. Standard Mortgage Corp., 191 F.Supp.3d 630, 642 (E.D. La. 2016) (Vance, J.) (holding that the plaintiff failed to plausible allege racketeering activity). However, the claims in that case were brought under the Racketeer Influence Corrupt

"an agent, charged with acting for the benefit of a principal, accepts something of value from a third party in return for steering the principal's business to the third party. *The defining characteristic of a kickback is divided loyalties.*" Cohen, 735 F.3d at 611 (emphasis added). The Cohen court held that because the agreement made clear that the lender was not acting on behalf of the borrower or his interests, but instead was obtaining insurance to solely protect its own interest, the lender did not have divided loyalties. Id.; Robsinson, 191 F.Supp.3d at 642 ("[Lender] did not act on [Borrower]'s behalf when it force-placed insurance coverage; it acted to protect its *own interest* in the mortgaged property. . . . So although [Borrower] sprinkles her complaint with the "kickback" label, the commissions and portfolio monitoring that [the insurer] provided to [Lender] were not kickbacks in any meaningful sense."); see also Faez v. Wells Fargo Bank, N.A., 745 F.3d 1098, 1110-11 (11th Cir. 2014). Its loyalty was only to itself. Cohen, 735 F.3d at 611. Further, the court held that "[n]othing in the loan agreement and related documents prohibits [Lender] and its insurance-agency affiliate from receiving a fee or commission when lender-placed insurance becomes necessary." Id. at 612.

---

Organizations Act. The Seventh Circuit, Eleventh Circuit, and this Court each granted the defendants' motions to dismiss for failure to state a claim.

10

Likewise, the mortgage agreement and the related notices do not prohibit Pacific Union from receiving a commission from the insurer. Moreover, because Woodside's mortgage agreement does not limit Pacific Union to charge Woodside only the amount necessary to obtain insurance, selecting a costly insurance policy does not exceed the authority granted to Pacific Union. The contract grants broad discretion to Pacific Union to protect its interest. Woodside also alleges that Pacific Union's interest was "diametrically opposed" to his own, but that is not problematic if Pacific Union does not purport to represent Woodside's interests. And Pacific Union does not. Woodside's mortgage agreement contains the same lender protections that the Cohen court relied on. It provides that the flood and hazard insurance "shall be maintain in the amount and for the period that Lender requires. . . [and that] [a]ll insurance shall be carried with companies approved by Lender." It also states that the lender may obtain "whatever is necessary to protect the value of the Property and *Lender's rights in the Property*." (emphasis added). No language in the mortgage agreement splits Pacific Union's loyalty between protecting its own property and obtaining an affordable LPI for the borrower, nor does it explicitly or implicitly prohibit Pacific Union from accepting a commission from Ironshore.

Woodside contends that Pacific Union violated the contract by backdating the lender-placed insurance to the date of Woodside's

11

lapse when no loss had occurred. The Seventh Circuit rejected this claim, holding that because the contract required continual coverage, the lender was permitted to acquire coverage for the property as soon as the insurance lapsed, including backdated insurance. Cohen, 735 F.3d at 613. The court also found that neither the lender nor the insurer could reasonably know whether loss occurred during the lapsed period. Id. Likewise, Woodside's mortgage agreement requires that the property be continually insured. As soon as the borrower's purchased insurance lapses, the lender is authorized to obtain a LPI policy. Additionally, both notices warn "[y]ou must pay us for any period during which the insurance we buy is in effect but you do not have insurance."[3] By backdating the insurance, Pacific Union was acting within its contractual authority to ensure that coverage applies from the date the insurance lapsed. If Woodside's property was damaged during the time between when his property lapsed and when Pacific Union paid for the LPI policy (following Woodside's 45-day window to obtain insurance), he would be insured. The agreement does not

---

[3] The plaintiff also contends that he should not have to pay for the insurance for the ten day period after his insurance lapse because of the Lender's Loss Payable Endorsement. The LLPE, or "standard mortgage clause," ensures that the lender has no risk of loss for the ten days after insurance lapses. However, the contract explicitly requires that the property have *insurance* coverage. Pacific Union is within its right to charge for insurance as soon as the insurance lapses even if a different provision, like LLPE, could protect the lender from loss.

12

contemplate that insurance is not required if no loss occurred. Further, Woodside does not allege how Pacific Union would know whether loss did or did not occur on Woodside's or any of its other borrowers' properties. Pacific Union's interest is insuring its property. It'd make little sense to fail to secure retroactive coverage just because a borrower had not yet made a claim. Because the Court disagrees with Woodside's interpretation of the contract's restrictions, and does not find the kickbacks and backdating practices to be in violation of the contract, Woodside's claim that Pacific Union breached the explicit terms of the contract fail.

Lastly, Woodside alleges that Pacific Union breached the implied covenant of good faith and fair dealing. He claims that it acted in bad faith through the conduct already discussed—selecting an expensive LPI policy, kickbacks, and backdating the policy—and by failing to maintain borrowers' existing insurance policies and seek competitive bids for LPI policies. Pacific Union argues that because it did not breach the contract, it cannot, as a matter of law, be found to have breached the duty of good faith and fair dealing. The Court agrees.

Louisiana law creates an implied obligation of good faith. La. Civ. Code art. 1983 ("Contracts must be performed in good faith."); Schaumburg v. State Farm Mut. Auto. Ins. Co., 421 Fed.Appx. 434, 439 (5th Cir. 2011)(unpublished)("Under Louisiana

13

law, every contract implies an obligation of good faith performance.") But "[a] breach of the duty of good faith and fair dealing requires a breach of a contract." Schaumburg, 421 Fed.Appx. at 439; Sartisky v. Louisiana Endowment for the Humanities, Civ. No. 14-1125, 2015 WL 7777979, at *3 ("If the actions of a party are permitted under the express terms of the agreement, that party cannot as a matter of law be acting in breach of the implied covenant of good faith and fair dealing."). Moreover, the breach must be effectuated with a "dishonest or morally questionable motive." Barbe v. A.A. Harmon & Co, 94-2423 (La. App. 4 Cir. 1/7/98); 705 So.2d 1210, 1220.

The Court has already determined that simply selecting a costly LPI policy (when the contract authorizes it and the lender disclosed the amount to be charged), accepting commissions, and providing (and charging for) coverage as soon as the borrower-selected coverage lapses does not constitute a breach of the mortgage agreement. The additional claims do not persuade the Court to find differently. It is not the lender's obligation to obtain a LPI policy from the insurer that the lender originally selected—it is entitled to select its own insurer. Likewise, it is not the lender's obligation to price shop for competitive insurance policies. It is the borrower's obligation and responsibility to obtain insurance, and to seek a price-competitive option. But when they fail to take those steps, the lender does not act in bad faith

for not investing the time and resources to secure the best deal for the borrower. See Cohen, 735 F.3d at 612 (holding that the implied duty of good faith does not require parties to "be reasonable," but to avoid invoking a contractual provision "dishonestly to achieve a purpose contract to that for which the contract had been made" and finding that the lender did not violate this duty when it gave the borrower notices of the LPI and that she could cancel at any time by securing her own insurance). Because Woodside has not alleged facts that support a finding that Pacific Union breached the contract, Pacific Union cannot as a matter of law be acting in breach of the implied covenant of good faith and dealing.

## B. Fiduciary Duty

In Count II of the complaint, Woodside alleges that Pacific Union breached its fiduciary duty and misappropriated escrow funds. Pacific Union breached this duty by using and depleting the escrow accounts "to pay for unnecessary and duplicative insurance" to generate additional profits. Pacific Union alleges that under Louisiana law, it does not owe the plaintiff a fiduciary duty.[4] Again, the Court agrees.

---

[4] Pacific Union also rejects the claims on substantive grounds. It contends that because the underlying theories of this claim are the same as the breach of contract claim (that the LPI policy

15

Louisiana law provides,

> No financial institution . . . shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, *unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary*. . . . This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.

La. Stat. § 1124 (emphasis added). It is uncontested that the mortgage agreement never explicitly stated that a "fiduciary relationship" arose. Furthermore, neither party disputes that under Louisiana law, mortgage lenders do not owe a fiduciary duty to their borrowers simply because of their status as a borrower; without explicit language in the contract, there is no fiduciary duty. See Leach v. Ameriquest Mortg. Servs., No. 06-1981, 2007 WL 2900480, at *2 (holding that "[p]laintiffs cannot assert a breach of fiduciary duty, because no fiduciary relationship was formed" by the mortgage agreement that authorized a lender to purchase flood insurance). Instead, Woodside claims that the duty arose out of the mortgage agreement in which Pacific Union agreed to hold, manage, and control any escrow funds in trust. Because Pacific Union agreed in writing to hold, manage, and control Woodside's escrow funds in trust, Woodside reasons, Pacific Union owes him

---

selection and the commission received was outside the lender's authorization), this fiduciary duty claim also fails.

the fiduciary duty owed by an escrow agent to an escrow account holder.

The existence of an escrow relationship does not alter Louisiana's statutory requirements that a fiduciary duty only exists if explicitly created by a written agreement. LaBauve v. JPMorgan Chase Bank, N.A., Civ. Action No. 17-259, 2018 WL 1125660, at *3-5 (M.D. La. Mar. 1, 2018) (unpublished) (holding that that a mortgage agreement that entrusts the lender with managing and controlling funds in the borrower's escrow account does not create a fiduciary relationship absent a written agreement where the lender agreed to act as a fiduciary); Clarkston v. Allstate Ins. Co., No. 06-4474, 2007 WL 128806, at *2 (E.D. La. Jan. 16, 2007)(Feldman, J.) (unpublished) (rejecting the plaintiff's argument that the lender had a fiduciary duty because it handled and administered escrow funds when no written agreement expressly created a fiduciary duty"); Faez, 745 F.3d 1098, 1110 (11th Cir. 2014) (dismissing the borrower's claim that the lender's "use of escrow funds to pay for the force-placed insurance breached fiduciary duties" because the borrower could not provide "a legal basis that a lender's administration of escrow funds creates a fiduciary relationship.") Because Woodside does not allege that Pacific Union agreed to be a fiduciary in any written document, the plaintiff fails to allege sufficient facts that a fiduciary relationship existed and that Pacific Union violated it.

Accordingly, IT IS ORDERED: that the defendant's motion to dismiss is GRANTED and the defendant's motion to amend the complaint is DENIED.[5] The plaintiff's complaint is dismissed with prejudice.

New Orleans, Louisiana, March 22, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[5] The plaintiff's complaint was thorough and detailed, but it alleged facts that simply do not have a legal basis. The plaintiff gives no indication that an opportunity to amend would successfully remedy the complaint's defects.